**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

BRYANT FRAZIER, *on behalf of*
*himself and all others similarly*
*situated*,

      **Plaintiff,**     **CIVIL ACTION NO:** <u>3:24cv716</u>

 **v.**

SCOUTLOGIC, INC.; and JF FITNESS
OF NORTH AMERICA d/b/a CRUNCH
FITNESS,

      **Defendants.**

**<u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

  COMES NOW the Plaintiff, BRYANT FRAZIER, on behalf of himself and all others similarly situated and by Counsel, and for his Complaint against Defendants ScoutLogic, Inc. ("ScoutLogic") and JF Fitness of North America d/b/a Crunch Fitness ("Crunch Fitness"), states as follows:

**NATURE OF THE CASE**

  1. Mr. Frazier brings this action against Defendants ScoutLogic, Inc. ("ScoutLogic") and JF Fitness of North America d/b/a Crunch Fitness ("Crunch Fitness") for multiple violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), and against Crunch Fitness for violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

  2. The FCRA imposes multiple important requirements on consumer reporting agencies, such as Defendant ScoutLogic, that sell employment-related consumer reports.

  3. ScoutLogic is a consumer reporting agency ("CRA") as defined by FCRA.

4.      ScoutLogic obtains consumer information bearing on consumers' character, general reputation, personal characteristics and mode of living from myriad sources such as criminal and traffic records, social security number information, sex offender registries, sanctions and debarments records, Department of Health & Human Services inspector general records, Food & Drug Administration debarment records, Office of Foreign Asset Control records, and U.S. General Services Administration excluded persons list.

5.      After acquiring consumer information from its sources, ScoutLogic regularly assembles that information into a report, which it then sells to third parties like Crunch Fitness to use in employment screening.

6.      In this case, ScoutLogic sold information purportedly about Plaintiff to Crunch Fitness, which then relied on that information to deny Plaintiff employment.

7.      ScoutLogic sells such consumer reports to customers throughout the country, using facilities of interstate commerce to transmit such reports, including but not limited to electronic transmission.

8.      Plaintiff was a victim of an inaccurate consumer report sold by ScoutLogic to Plaintiff's prospective employer, Crunch Fitness. Plaintiff was denied employment because Crunch Fitness relied on the inaccurate and derogatory consumer report about him.

9.      ScoutLogic reported derogatory information about Plaintiff to Crunch Fitness for employment purposes, yet it did not provide Plaintiff with contemporaneous notice that it was reporting that information.

10.     As a result of Crunch Fitness's use of the erroneous consumer report sold by ScoutLogic, Plaintiff was left jobless and humiliated.

11.     The FCRA imposes duties upon other entities in addition to CRAs. In the employment context, the statute requires that before an employer takes an adverse action based in whole or in part on the contents of a consumer report, the employer must provide the consumer with a copy of the report and a reasonable amount of time to explain or correct any derogatory or inaccurate information. 15 U.S.C. § 1681b(b)(3); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 638–39 (E.D. Va. 2016).

12.     Here, Crunch Fitness told Plaintiff it was terminating his employment based on the contents of the report ScoutLogic furnished about him. Yet, Crunch Fitness has never provided Plaintiff with a copy of the report on which that decision was based. This is a textbook violation of Section 1681b(b)(3) by an employer.

13.     Plaintiff sought to learn the reasons for the inaccurate reporting, and contacted ScoutLogic to ask for his full consumer file. Under those circumstances, the FCRA requires ScoutLogic to provide him with all the information in his file, commonly known as a "file disclosure," including the sources of that information. 15 U.S.C. § 1681g. ScoutLogic did not respond to that request.

14.     Plaintiff therefore brings a nationwide class claim against ScoutLogic for violations of Section 1681g of the FCRA, as it failed to provide him with his full file disclosure after he requested it.

15.     Plaintiff brings a nationwide class claim against ScoutLogic under Section 1681k(a)(1) of the FCRA, because ScoutLogic reported derogatory information about Plaintiff to Crunch Fitness for employment purposes, but did not provide Plaintiff with contemporaneous notice that it was providing that information to Crunch Fitness.

16.     Plaintiff also brings an individual claim against ScoutLogic for violations of Section 1681e(b) of the FCRA, because ScoutLogic failed to have in place reasonable procedures to assure the maximum possible accuracy of the information it was reporting about Plaintiff.

17.     Plaintiff brings an individual FCRA claim against Crunch Fitness as well, under 15 U.S.C. § 1681b(b)(3), because Crunch Fitness took an adverse-employment action against Plaintiff, firing him, based at least in part on the contents of the consumer report SoutLogic sold about Plaintiff.

18.     Finally, Plaintiff asserts an individual claim under the Fair Labor Standards Act ("FLSA") against Crunch Fitness, as it failed to pay Plaintiff at least the relevant minimum wage for each of the hours that he worked at Crunch Fitness before his termination.

## PARTIES

19.     Mr. Frazier is a resident of Virginia.

20.     He is a natural person and a "consumer" as protected and governed by the FCRA, 15 U.S.C. § 1681a(c).

21.     Defendant ScoutLogic is an Illinois corporation that conducts business throughout the United States.

22.     At all relevant times hereto, Defendant ScoutLogic was a CRA as defined by 15 U.S.C. § 1681a(f).

23.     Defendant Crunch Fitness is a Virginia limited liability company that conducts business throughout the United States.

24.     Plaintiff was an "employee" of Defendant Crunch Fitness's under 29 U.S.C. § 203(e) within the three years preceding the filing of this Complaint.

25.     Plaintiff worked for Defendant Crunch Fitness from August 7, 2024 through August 11, 2024.

26.     Plaintiff worked for Defendant Crunch Fitness as a General Manager.

27.     As an employee of Crunch Fitness's, Plaintiff was subject to the FLSA's minimum wage provision.

28.     Defendant Crunch Fitness has more than two employees.

29.     Defendant Crunch Fitness has gross annual sales that exceed $500,000.

30.     At all times relevant to this action, Defendant Crunch Fitness was an "employer" under 29 U.S.C. § 203(s).

## JURISDICTION AND VENUE

31.     This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

32.     Subject-matter jurisdiction is also conferred upon this Court by 28 U.S.C. § 1337 because this action arises under Acts of Congress regulating commerce.

33.     Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendants regularly conduct business in this District and Division, and a substantial part of the events giving rise to the claims occurred in this District and Division.

## FACTUAL ALLEGATIONS

### Defendants' FCRA Violations

34.     Congress passed the FCRA to protect consumers from the harm caused by inaccurate reporting.  To this end, the FCRA requires that all consumer reporting agencies (CRAs) that report criminal background information to employers use "reasonable procedures to ensure

maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

35.     Defendant ScoutLogic violated Section 1681e(b) of the FCRA when it published inaccurate public record information about Mr. Frazier in an employment background report.  As a result of Defendant ScoutLogic's inclusion of this information in a consumer report, Mr. Frazier lost a job and suffered emotional distress.

36.     Congress also sought to protect consumers by creating heightened standards regulating how employers obtain and use information in consumer reports to conduct background checks on prospective employees.  15 U.S.C. § 1681b(b)(3).

37.     The FCRA requires employers to provide certain notices to the subjects of the consumer reports before taking an adverse employment action whenever that action is based, even just in part, on a consumer report.  Specifically, under 15 U.S.C. § 1681b(b)(3):

> in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> **(i)**     a copy of the report; and
>
> **(ii)**    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3)1 of this title.

38.     The FCRA is designed to provide individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before an employment decision has been made.  Providing a copy of the consumer report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the

knowledge and information needed to challenge inaccurate, incomplete and misleading public-records-based reports.

39.    Congress permitted consumers to sue to redress a breach of these substantive rights and, if successful, to be awarded actual, statutory and/or punitive damages.  15 U.S.C. §1681n.

40.    Crunch Fitness violated Section 1681b(b)(3) when it took an adverse employment action against Mr. Frazier based on information in a consumer report without first providing him with a copy of the pertinent consumer report and a statement of his rights under the FCRA, and without providing him with a reasonable opportunity to respond to the information in the report.

41.    On August 7, 2024, Plaintiff began working for Crunch Fitness as a General Manager.

42.    As part of its hiring process, Crunch Fitness purchased a consumer report on Mr. Frazier from ScoutLogic the same day that Mr. Frazier began work.

43.    The consumer report that ScoutLogic furnished to Crunch Fitness was used or expected to be used or collected for the purpose of evaluating a consumer for employment purposes.

44.    The consumer report that ScoutLogic furnished to Crunch Fitness contained public record information likely to have an adverse effect on Mr. Frazier's ability to obtain employment.

45.    Despite providing a report containing negative criminal history about Plaintiff, ScoutLogic did not provide him with "at-the-time" notice that it was furnishing that report to Crunch Fitness. 15 U.S.C. § 1681k(a)(1).

46.    In obtaining that public record information it reported, discovery will show that ScoutLogic did not go directly to the courthouse at which those original records are housed.

Instead, ScoutLogic relied on electronic means like webscrape or the purchase of bulk criminal-history records to obtain the data it reported.

47.     In collecting records in this manner, ScoutLogic never obtains the complete file, such as the Social Security Number of the offender to whom the criminal records belong. ScoutLogic's electronically sourced records are therefore never complete because the originating court's records contain such data.

48.     Since ScoutLogic never obtains the complete criminal records, it cannot rely on the requirement of Section 1681k(a)(2) that it have in place strict procedures designed to assure that it report only public records that are "complete and up-to-date."  15 U.S.C. § 1681k(a)(2).

49.     ScoutLogic therefore must provide consumers like Plaintiff with "at-the-time" notice that it is providing the

50.     Defendant ScoutLogic did not provide Mr. Frazier with notice of the fact that it was reporting adverse public record information about him at the time it furnished the information to Defendant Crunch Fitness.

51.     After Mr. Frazier worked for Defendant Crunch Fitness for several days, he received a communication from his immediate boss: "HR got your background screening returned and we are unfortunately going to have to rescind your employment.  You will be paid as mentioned from Wednesday until the end of the pay period which was yesterday."

52.     Mr. Frazier tried to tell Defendant Crunch Fitness that he had no criminal record, and that there must be a mistake, but Defendant Crunch Fitness told him that the consumer report showed otherwise.

53.     Defendant Crunch Fitness's Vice President of Human Resources emailed Mr. Frazier: "I would encourage you to contact ScoutLogic and discuss these things with them and

ask for a copy of their background investigation report. There are multiple charges that are concerning and we have made the decision to rescind the offer and offer the position to another candidate."

54.    When Crunch Fitness informed Mr. Frazier of its decision to terminate his employment, it had not given him a copy of the consumer report or a copy of his rights under the FCRA.

55.    Instead, Crunch Fitness was directing Mr. Frazier to ScoutLogic to obtain the consumer report, even though it had already made the decision to rescind the employment offer.

56.    This process does not comply with Section 1681b(b)(3) of the FCRA for at least two reasons: (1) Crunch Fitness, not ScoutLogic, is the one tasked with providing Mr. Frazier with a copy of his consumer report and a written summary of his FCRA rights; and (2) Crunch Fitness should have provided those items to Mr. Frazier before it fired him.

57.    ScoutLogic had reported someone else's criminal record as belonging to Mr. Frazier.

58.    The information reported by Defendant ScoutLogic was inaccurate and it did not belong to Mr. Frazier.

59.    Defendant ScoutLogic should have known that the information did not belong to Mr. Frazier because the criminal records maintained by the source of the records – the court – contained a first name and social security number that differed from Mr. Frazier's first name and social security number.

60.    After Defendant Crunch Fitness terminated Mr. Frazier's employment, Mr. Frazier contacted Defendant ScoutLogic to obtain a copy of his consumer report: "Also, Crunch Fitness never gave me a copy of the original background check. Can you please email me a copy of it?"

61.     To this day, Defendant ScoutLogic has not provided Mr. Frazier with a copy of his consumer report.

62.     Mr. Frazier also filed a dispute with Defendant ScoutLogic concerning the inaccurate information in his consumer report.

63.     ScoutLogic confirmed that it received his dispute on August 15th: "Please allow this email to serve as notification that your dispute request has been received and our reinvestigation of your consumer report has been opened."

64.     On September 12th, Defendant ScoutLogic sent Mr. Frazier its dispute results.

65.     The dispute results showed that Mr. Frazier had no criminal record whatsoever.

66.     ScoutLogic had removed from Mr. Frazier's original consumer report all of the criminal records that it had reported about Mr. Frazier.

67.     Nonetheless, Crunch Fitness has refused to reemploy Mr. Frazier, despite the clean consumer report.  Instead, according to its communication to Mr. Frazier, it "made the decision to rescind the offer and offer the position to another candidate."

***Defendant Crunch Fitness' FLSA Violation***

68.     Mr. Frazier worked for Crunch Fitness from August 7, 2024 through August 11, 2024 as a General Manager.

69.     Mr. Frazier was subject to the FLSA's minimum wage and overtime provisions as an employee of Crunch Fitness's.

70.     From August 7, 2024 to August 11, 2024, Mr. Frazier provided services to Crunch Fitness.

71.     From August 7, 2024 to August 11, 2024, Crunch Fitness failed to compensate Mr. Frazier.

72.     Crunch Fitness was aware of the hours Mr. Frazier worked, but for which it did not compensate him.

73.     Indeed, after Crunch Fitness terminated Mr. Frazier's employment, it sent him a message: "HR got your background screening returned and we are unfortunately going to have to rescind your employment.  You will be paid as mentioned from Wednesday until the end of the pay period which was yesterday."

74.     But Crunch Fitness never paid Mr. Frazier for the work he performed.

75.     Crunch Fitness has acted willfully and intentionally in violating the FLSA.

76.     Mr. Frazier consents to participate in this action.  His consent is attached as Exhibit 1 and is a part hereof for all purposes under FED. R. CIV. P. 10(c).

## CLASS ACTION ALLEGATIONS

77.     Plaintiff brings this action on a class basis, with initial class definitions that follow.

78.     *The § 1681k(a)(1) Notice Class, on or after August 1, 2022.*  Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681k, Plaintiff brings this action for himself and on behalf of the following "Section 1681k Notice Class," of which he is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report issued after August 1, 2022, (b) that was furnished by ScoutLogic to a third party, (c) that contained at least one record of a criminal conviction or arrest, and (d) to whom ScoutLogic did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice to the subject consumer that it was furnishing the report and containing the name of the person that was to receive the report.

79.     *The § 1681g File Disclosure Class, on or after August 1, 2022.* Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681g, Plaintiff brings this action for himself

and on behalf of the following "File Disclosure Class," of which he is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who after August 1, 2022, (b) requested their full file disclosure or consumer disclosure from ScoutLogic; and (c) to whom ScoutLogic did not provide those disclosures to the requesting consumer.

80.    **Numerosity.**   Upon information and belief, the putative Classes exceed 50 members each.   Information concerning the exact size of the putative Classes is within the exclusive possession of ScoutLogic or its agents.

81.    The Class members are so numerous and geographically dispersed that joinder of all members is impracticable.

82.    **Typicality.** Plaintiff's claims are typical of the claims of the other Class members as all Class members were similarly affected by ScoutLogic's unlawful conduct in violation of the FCRA.

83.    **Adequacy.** Plaintiff will fairly and adequately protect the interest of the Class Members and has retained counsel competent and experienced in complex litigation. Plaintiff is a member of the Classes and does not have any interests antagonistic to or in conflict with the members of the Classes. Plaintiff's claims are the same as those of the Classes, which all arise from the same operative facts and are based upon the same legal theories.

84.    **Commonality.**  Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including by example only and without limitation:

> a.  Whether the uniform failure to provide a timely notice ScoutLogic was furnishing employment purposed consumer reports containing a negative public record violated the FCRA;

b.  Whether ScoutLogic maintains strict procedures designed to insure complete and up-to-date reports when it never obtains a complete and up-to-date court record, therefore § 168lk(a)(2) is inapplicable;

c.  Whether ScoutLogic has in place a process for providing consumers with their file disclosures;

d.  The amount of statutory damages to award Plaintiff and class members for ScoutLogic's violations of the FCRA; and

d.  Whether ScoutLogic's violations of the FCRA were willful.

85.  **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Classes is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

86.  Further, the prosecution of several actions by individual members of the Classes would create a risk of varying adjudications with respect to members of the Classes, as well as create inconsistent standards of conduct for those opposing the Classes. Additionally, individual actions by members of the Classes may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

87.  **Predominance.**  The claims of the class members, including the common questions of law and fact, predominate over any individual facts or legal issues present in the class claims.  There are no factual or legal issues that differ among the putative class members. The principal issues are, among others: (a) whether ScoutLogic sold a consumer report to third parties about Plaintiff and each putative class member that contained negative information and to whom ScoutLogic did not send contemporaneous notice that it was furnishing those reports; (b) whether ScoutLogic had procedures in place to provide FCRA-compliant file disclosures; (c) whether ScoutLogic received advice, guidance, counsel, or legal advice regarding FCRA

compliance; (d) whether ScoutLogic delivers compliant full-file disclosures; and (e) whether ScoutLogic acted willfully. ScoutLogic's violations were negligent, reckless, knowing or intentionally committed in conscious disregard for the rights of the Plaintiffs and putative Class Members.

88. The members of the classes can be identified and ascertained by using the ScoutLogic's records, records maintained by its customers and the end-users of consumer reports furnished by ScoutLogic to its employer clients.

## CLAIMS FOR RELIEF

### COUNT 1 – 15 U.S.C. § 1681e(b)
### (Individual claim against ScoutLogic)

89. Plaintiff realleges Paragraph Nos. 1–67 as if fully set forth herein.

90. ScoutLogic violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report furnished regarding Plaintiff.

91. Defendant ScoutLogic knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

92. Defendant ScoutLogic obtained or had available substantial written materials that apprised it of its duties under the FCRA.

93. Despite knowing of these legal obligations, Defendant ScoutLogic acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

94.     As a result of this conduct, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

95.     The violation by Defendant ScoutLogic was willful, rendering Defendant ScoutLogic liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant ScoutLogic was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

96.     Plaintiff is entitled to recover attorneys' fees pursuant to 15 U.S.C. § 1681n(a) or, alternatively, 15 U.S.C. § 1681o(a).

## COUNT 2 – 15 U.S.C. § 1681g
### (Class claim against ScoutLogic)

97.     Plaintiff realleges Paragraph Nos. 1–88 as if fully set forth herein.

98.     Plaintiff brings this claim on behalf of himself and the § 1681g File Disclosure Class described above.

99.     The purpose underlying the FCRA is to require that CRAs adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer.  15 U.S.C. § 1681(b). To achieve this purpose, consumers have a right to request all information in files maintained by consumer reporting agencies to ensure that it is accurate and up to date.

100.     Section 1681g of the FCRA requires that upon request from a consumer, a consumer reporting agency shall clearly and accurately disclose to the consumer "[a]ll information in the consumer's file at the time of the request."

101.    The FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."  15 U.S.C. § 1681a(g).

102.    ScoutLogic violated 15 U.S.C. § 1681g by failing to provide any information in Plaintiff's and Class members' files at the time of their requests.

103.    ScoutLogic knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.  *See Cortez v. Trans Union, L.L.C.*, 617 F.3d 688, 712 (3d Cir. 2010); *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 544-45 (E.D. Pa. 2012); *Holmes v. Telecheck Int'l.*, 556 F. Supp. 2d 819, 838 (M.D. Tenn. 2008).

104.    ScoutLogic obtained or had available substantial written materials that apprised it of its duties under the FCRA.

105.    Despite knowing of these legal obligations, ScoutLogic acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

106.    The conduct, action, and inaction of ScoutLogic was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

107.    Plaintiff and other members of the putative "1681k(a)(1) Notice Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from ScoutLogic, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**COUNT 3 – 15 U.S.C. § 1681k**
**(Class claim against ScoutLogic)**

108.     Plaintiff realleges Paragraph Nos. 1–88 as if fully set forth herein.

109.     Plaintiff brings this claim on behalf of himself and the § 1681k(a)(1) Notice Class described above.

110.     The consumer reports of Plaintiff and of each member of the "1681k(a)(1) Notice Class" was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

111.     As to Plaintiff and the "1681k(a)(1) Notice Class," ScoutLogic uniformly fails to comply with the rigors of FCRA § 1681k(a)(2) and therefore must necessarily rely on its compliance with § 1681k(a)(1) to meet its statutory obligations.

112.     Discovery will show that ScoutLogci obtains public records including criminal records via webscrape or a third-party vendor and does not attempt to obtain this information through its own courthouse searches.

113.     The information ScoutLogic obtains is therefore incomplete, as it omits important information contained in the original court files.

114.     Discovery will also show that as to the "1681k(a)(1) Notice Class," ScoutLogic did not send such class members a notice pursuant to 15 U.S.C. § 1681k(a)(1).

115.     Discovery will further confirm that as to the "1681k(a)(1) Notice Class," Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within 30 days before it furnishes and sells these records in one of its reports.

116.     ScoutLogic's failure to timely provide the required FCRA notices to the Plaintiff and other members of the "1681k(a)(1) Notice Class" violated 15 U.S.C. § 1681k(a)(1).

117.     The conduct, action, and inaction of ScoutLogic was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

118.     Plaintiff and other members of the putative "1681k(a)(1) Notice Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from ScoutLogic, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### COUNT 4 – 15 U.S.C. § 1681b(b)(3)
### (Individual claim against Crunch Fitness)

119.     Plaintiff realleges Paragraph Nos. 1–76 as if fully set forth herein.

120.     Crunch Fitness used a consumer report to take an adverse employment action against Plaintiff.

121.     Crunch Fitness violated Section 1681b(b)(3)(A) by failing to provide Plaintiff with a copy of the consumer report and a description of his rights under the FCRA before taking an adverse employment action against him that was based, even in part, on the consumer report.

122.     This practice violates one of the most fundamental protections afforded to employees under the FCRA and runs counter to longstanding regulatory guidance.  (Federal Trade Commission letter dated June 9, 1998, to A. Michael Rosen, Esq., regarding Section 604(b), Section 605, and Section 607 of the FCRA) ("[15 U.S.C. § 1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken.  Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.  Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information…").

123.    Crunch Fitness knew or should have known about its obligations under the FCRA. These requirements are well established in the plain language of the FCRA, in the promulgation of the Federal Trade Commission, and in well-established caselaw. *See Reardon v. Closetmaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013) (certifying class against company for employment applicants who did not receive pre-adverse action notice); *Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2013 WL 5506027 (D. Md. Oct. 2, 2013) (class settlement for violation of Section 1681b(b)(3)(A)); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880 (S.D. Oh. May 24, 2013)(class settlement for pre-adverse action class); *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012)("The 'clear purpose' of this section is to afford employees time to 'discuss reports with employers or otherwise respond before adverse action is taken.") (internal quotations omitted); *Beverly v. Wal-Mart Stores, Inc.*, CIV. A. 3:07CV469, 2008 WL 149032 (E.D. Va. Jan. 11, 2008) ("Simultaneous provision of a consumer report with a notice of adverse action fails to satisfy § 1681b(b)(3)(A) requirement. Accordingly, the Court finds that a reasonable jury could find that defendant violated § 1681b(b)(3)(A) when it took adverse action before it provided plaintiff with a copy of his consumer report."); *Williams v. Telespectrum*, Civ. No. 3:05cv853 (E.D. Va. 2006) ("An employer must provide a copy of the report with "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report.").

124.    Despite knowing of these legal obligations, Crunch Fitness acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

125.     As a result of this conduct, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

126.     The violation by Crunch Fitness was willful, rendering Defendant Crunch Fitness liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant Crunch Fitness was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

127.     Plaintiff is entitled to recover attorneys' fees pursuant to 15 U.S.C. § 1681n(a) or, alternatively, 15 U.S.C. § 1681o(a).

### COUNT 5 – 29 U.S.C. § 206
### (Individual claim against Crunch Fitness)

128.     Plaintiff realleges Paragraph Nos. 1–54 and 68–76 as if fully set forth.

129.     By engaging in the conduct described above, Crunch Fitness failed to pay Plaintiff at a rate of at least the relevant minimum wage for each of the hours that he worked, in violation of 29 U.S.C. § 206.

130.     Crunch Fitness's actions in failing to compensate Plaintiff in accordance with the FLSA were willful under 29 U.S.C. § 255(a), and committed with a conscious disregard for Plaintiff's rights.

131.     As a result of Crunch Fitness's violation of the FLSA, Plaintiff has a right to recover his unpaid compensation and an equal amount as liquidated damages, as well as prejudgment interest, reasonable attorneys' fees, and costs of suit, under 29 U.S.C. § 216(b), all in amounts to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

With respect to Counts 1 and 4:

    a.   An award of actual, statutory and punitive damages;

    b.   An award of pre-judgment and post-judgment interest as provided by law;

    c.   An award of attorneys' fees and costs; and

    d.   Such other relief, including equitable relief, as the Court deems just and proper.

With respect to Counts 2–3:

    a.   An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned counsel to represent same;

    b.   The creation of a common fund available to provide notice of and remedy ScoutLogic's unlawful conduct;

    c.   That judgment be entered for Plaintiff individually for actual and/or statutory damages and punitive damages against ScoutLogic for violation of 15 U.S.C. § 1681e(b) and pursuant to 15 U.S.C. §§ 1681n and 1681o;

    d.   Statutory and punitive damages for all class claims;

    e.   Attorneys' fees, expenses, and costs;

    f.   Pre-judgment and post-judgment interest as provided by law; and

    a.   Such other further relief, including equitable relief, this Court considers just and proper.

With respect to Count 5:

    a.   Proper payment for each hour worked during Plaintiff's employment with Crunch Fitness, and liquidated damages equaling 100% of the compensation due Plaintiff, as required by the FLSA;

    b.   Prejudgment interest on all amounts owed;

    c.   Reasonable attorneys' fees and costs of litigation; and

d.  Such other further relief, including equitable relief, this Court considers just and proper.

## DEMAND FOR JURY TRIAL

**PLAINTIFF hereby demands a jury trial on all claims for which he has a right to a jury.**

DATED: October 10, 2024

Respectfully submitted,

**BRYAN FRAZIER,** *individually and on behalf of and all others similarly situated,*

By: /s/ Leonard A. Bennett
Leonard A. Bennett Va. Bar #37523
Craig C. Marchiando Va. Bar #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
lenbennett@clalegal.com
craig@clalegal.com

Andrew L. Weiner (*pro hac vice forthcoming*)
Georgia Bar No. 808278
Jeffrey B. Sand (*pro hac vice forthcoming*)
Georgia Bar No. 181568
WEINER & SAND LLC
800 Battery Ave. SE, Suite 100
Atlanta, Georgia 30339
(404) 205-5029 (Tel.)
(404) 254-0842 (Tel.)
(866) 800-1482 (Fax)
aw@wsjustice.com
js@wsjustice.com

*Attorneys for Plaintiff*